IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MACK HODGES and | ) |
| MICHAEL BURT, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:19-CV-00329-RAH |
| | ) |
| VECTRUS SYSTEMS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss the First Amended Complaint (Motion or MTD) (Doc. 19) filed by Defendant Vectrus Systems Corporation (Vectrus or Defendant), seeking dismissal of the First Amended Complaint (Complaint) (Doc. 15) filed by Plaintiff Mack Hodges (Hodges) and Plaintiff Michael Burt (Burt) (collectively, Plaintiffs). The Plaintiffs have filed a response (Response) (Doc. 24) in opposition thereto, and Vectrus has filed a reply (Reply), (Doc. 25). For the reasons discussed below, the Court will grant the Motion.

**I.   BACKGROUND[1]**

---

[1] For purposes of this Motion's adjudication only, the Court treats all factual allegations within the Complaint as true and presents them accordingly throughout this Opinion.

1

Vectrus is a government contractor that performed several construction projects at Maxwell Air Force Base in Montgomery, Alabama. (Doc. 15 at 2.) Hodges, 63 years old, and Burt, 60 years old, are black employees at Vectrus. (*Id.*) Until September 17, 2018, both men reported to Timothy Hooper (Hooper).

The conduct at issue in this case occurred from April 2018 to September 2018. (*Id.* at 2-6; *see also* Doc. 24 at 1-5.) In April 2018, a co-worker told Hodges that he had overheard Hooper describe Hodges and Burt as "old idiots" who he wanted to get rid of. (Doc. 15 at 4.) During the first two weeks of May, Hooper made statements directly to both men, including that they both were "old farts", "numb nuts", and "old and slow." (*Id.* at 4.) Not long thereafter, Hooper began complaining about their performance. (*Id.* at 5-6.)

On May 9, 2018, Hooper accused Hodges and Burt of "goofing off" during a work project. (Doc. 15 at 3.) Hodges and Burt disputed this critique. (*Id.*) Nevertheless, both men "were suspended for three (3) days, with pay, until further notice." (*Id.*) They returned to work and to their positions three days later on May 11, 2018. (*Id.*) Believing they had been falsely accused, Hodges and Burt filed grievances through their union representative soon thereafter. (*Id.* at 4.)

Upon their return, new issues emerged. Within days, Hooper informed Hodges and Burt that they would be sent home again for three days. (*Id.*) Hodges also received a verbal warning document but refused to sign it. (*Id.*) On May 23,

2

2018, they were told that their suspensions would be lifted. (*Id.*) Although they both were presented with write-ups, they declined to sign them. (*Id.*) Sometime thereafter, Hodges and Burt were approached to gauge their willingness to agree to a two-day suspension with pay and a one-day suspension without pay, but once more, Hodges and Burt rejected any such proposal. (*Id.* at 5.) After this rebuff, no further efforts were made to suspend them. (*Id.*)

Nevertheless, Hooper continued to berate Hodges and Burt at work. On one occasion, Hooper told Hodges: "You are too . . . dumb to spell the words you are trying to put on the . . . paper." (*Id.*) On a regular basis, Hooper would talk to both men in a harsh and condescending manner. (*Id.*) He once even made a false accusation that they had failed to clean up a work site and had left it in an unsafe condition. (*Id.*)

Hodges complained to Hooper about Hooper's language and his seeming favoritism of white workers over black workers. (*Id.*) According to Hodges and Burt, this favoritism took the form of their lack of overtime, Fridays off, and ability to work through lunch, all of which were perks given to white employees. (*Id.* at 6.)

Following a discussion with others at Vectrus about Hooper's language and treatment, certain changes took place. Hodges's position was reclassified from a journeyman carpenter to a roofer, a more dangerous position, and Burt was reassigned from a maintenance technician to a lower-paying laborer position. (*Id.* at

3

2, 5.) However, Hodges and Burt concede that these "changes occurred while Vectrus was downsizing at Maxwell Air Force Base and the positions of Mr. Hodges and Mr. Burt were changed to allow them to maintain their jobs, due to their seniority and the union agreement."[2] (Doc. 24 at 10.)

On August 17, 2018, Hodges and Burt filed complaints with the Equal Employment Opportunity Commission (EEOC). (Doc. 15 at 6.) In their complaints, they alleged race and age discrimination but did not raise issues of retaliation or harassment. (*Id.*) Following these filings, several employees at Vectrus, including Hooper, were terminated on September 19, 2018. (*Id.*) Hodges and Burt were not terminated. (*Id.*)

After receiving notices of their right to sue on February 8, 2019, Hodges and Burt launched this suit on May 6, 2019, with allegations of race and age discrimination, harassment and retaliation.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are uncontested.

## III. STANDARD OF REVIEW

---

[2] Although the Complaint initially alleged that these employment position changes resulted from race and age discrimination, the Plaintiffs since have retracked this original allegation. *See infra* Part IV.I.

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A district court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69-73 (1984), and construes them "in the light most favorable to the plaintiff[]," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Id*. at 570. Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

IV.   **DISCUSSION**

    **A.   The Claims Based on Changes in Job Positions.**

While the Complaint accuses Vectrus of race and age discrimination in a variety of manners, at least one set of incidents can be readily set aside. Specifically, as it concerns the July 8, 2018, demotion of Burt and lateral job re-assignment of Hodges, Hodges and Burt already have made a crucial concession—that their job

5

position changes resulted from non-discriminatory downsizing at Maxwell Air Force Base—and therefore they now abandon any claims based upon their job reassignments. (Doc. 24 at 10.) In their words, Hodges and Burt now "do[] not make a claim against Vectrus based on the demotion (Burt) and transfer (Hodges)." (*Id.*) As such, Vectrus' motion to dismiss all counts in the Complaint based upon these actions is granted.

### B. The Remaining Claims for Race and Age Discrimination.

Aside from the job demotion and reassignment, Hodges and Burt claim they have been discriminated against based on race and age in the following ways: they (1) were falsely accused of "goofing off" and therefore were wrongly suspended for three days with pay; (2) were told they were going to be suspended for three days, albeit no actual suspension took place, on another occasion; (3) were given unjustified verbal warnings; (4) were referred to as "old idiots", "old farts", "numb nuts", and "old and slow"; and (5) were not afforded overtime, Fridays off, and the ability to work through lunch like the white employees.

For any claim of race or age discrimination, one of the primary considerations in a plaintiff's prima facie case is that the plaintiff suffers an adverse employment action or, as Vectrus puts it, "an actionable discriminatory event." To prove an adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a "serious and material change in the terms, conditions, or

6

privileges of employment." *David v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  An employee bears a similar burden concerning a claim for age discrimination.  *See Liebman v. Metro. Life Ins. Co*. 808 F.3d 1294, 1298 (11th Cir. 2015).

As it concerns suspensions with pay, there is no *per se* rule in the Eleventh Circuit that a suspension with pay cannot constitute an adverse employment action. In fact, albeit in the context of a retaliation claim, the Eleventh Circuit expressly has held that a suspension with pay for thirty days is an adverse employment action. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1993). A district court within this Circuit, evaluating a discrimination claim, has collected district court cases from across the country and determined that paid suspensions generally are not adverse employment actions when the suspension is "for less than a month." *Brown v. Bd. of Regents of Univ. Sys. of Ga.*, No. 1:14-CV-0365-LMM-LTW, 2016 WL 4925792, at *9 (N.D. Ga. Feb. 12, 2016), *report and recommendation adopted*, No. 1:14-CV-0365-LMM-LTW, 2016 WL 5419787 (N.D. Ga. Mar. 1, 2016) (collecting cases); *see Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 829 (11th Cir. 2005) (concluding that one-day suspension without pay did not constitute an adverse employment action).

Here, three crucial facts are incontestable as to Hodges' and Burt's suspensions: (1) they lasted only three days, (2) during which both men endured no loss in pay, and (3) after which they returned to their pre-suspension positions. This is a far cry from the limited occasions when a suspension with pay has been found to constitute an adverse employment action. As such, the Court concludes there has been no adverse employment action concerning their suspensions and, therefore, any claim of race and age discrimination based upon them fails and is due to be dismissed.

Logically, since the Court concludes that Hodges' and Burt's suspensions with pay do not rise to the level of actionable employment actions, it should go without saying that a mere *threat* to suspend with pay does not either. That discrimination claim equally is due to be dismissed.

The same conclusion is easily reached to the extent Hodges and Burt claim discrimination based upon statements made to them (such as an accusation that they had been "goofing off," were "old farts," or "old and slow") by Hooper. By any measure, such statements do not constitute a change in the terms, conditions or privileges of employment.

Finally, Hodges and Burt make vague allegations about not receiving overtime, Fridays off, or the opportunity to work through lunch, which were perks allegedly provided to white co-workers, as actionable employment actions under the

allegations in the Complaint.  However, the failure to be given such perks is not an adverse employment action under these circumstances.

The law as to this issue is clear.  True, the Eleventh Circuit has held that, in certain instances, denial of a right to overtime constitutes an adverse employment action. *See Shannon v. Bellsouth Telecomms., Inc*., 292 F.3d 712, 716 (11th Cir. 2002) (holding that a plaintiff who presented evidence that he was "totally blackballed" from overtime in retaliation constitutes an adverse employment action); *Bass v. Bd. of Cty. Com'rs, Orange Cty., Fla*., 256 F.3d 1095, 1118 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008)(holding that the denial of overtime to plaintiff, who showed that overtime was available to other similarly situated employees, was an adverse employment action).

The distinction between these cases and here, however, is that Hodges and Burt have not plead that overtime was guaranteed, was available for their positions, or how much overtime they lost.  Neither have they alleged that they would have worked overtime if it was available to them. Indeed, when considered against Hodges' and Burt's admission as to the downsizing of positions at Maxwell, it is hard for the Court to fathom that much overtime was available to anyone there.  In short, Hodges and Burt do not allege that overtime was a benefit guaranteed (or substantially guaranteed) to them at any position at Vectrus. Accordingly, the Court concludes that Hodges and Burt have not sufficiently pleaded that their loss of

potential overtime is an adverse employment action. *See Collins v. Miami-Dade Cty.*, 361 F. Supp. 2d 1362, 1372 (S.D. Fla. 2005)*; Drew v. Ill. Dep't of Human Servs.*, 101 F. App'x 637, 639 (7th Cir. 2004) (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (holding that an adverse employment action does not include an employer's denial of overtime where such benefit was purely discretionary and not automatically entitled)).

The claims regarding lack of Fridays off and the opportunity to work through lunch fail for the same reasons as do those for the lack of overtime. *See Dixon v. Palm Beach Cty. Parks & Recreation Dep't,* No. 07-80528-CIV, 2009 WL 200013, at *4 (S.D. Fla. Jan. 26, 2009) (concluding that the denial of certain days off did not constitute an adverse employment action for a retaliation claim). Hodges and Burt have not alleged that either benefit was substantially guaranteed and how many opportunities they were not given.

Therefore, Vectrus' motion to dismiss Counts I, II, IV and V is GRANTED.

**C.    The Claims for Retaliation and Harassment**

**1.  Exhaustion of Administrative Remedies**

In its Motion, Vectrus agues the claims of retaliation and harassment contained in Counts III and VI should be dismissed because Hodges and Burt failed to raise these issues in their EEOC charges and therefore failed to exhaust their administrative remedies.  (Doc. 12 at 4-5.)  Citing *Thomas v. Miami-Dade Public*

*Health Trust*, 369 F. App'x 19, 22-23 (11th Cir. 2010), Vectrus further argues that since the retaliation claims are new alleged acts and not merely additional amplifying or clarifying allegations, "[t]hese claims needed to have been presented to the EEOC in order to be before a federal court now." (Doc. 12 at 5.) Vectrus makes a similar argument as to the harassment (hostile work environment) claim. (*Id.* at 6-7.)

For their part, Hodges and Burt dispute these contentions. They argue their retaliation and hostile work environment claims should not be confined by technicalities because they grow out of their filed EEOC charges. The Court agrees, in part.

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Thomas*, 369 F. App'x at 22 (quoting *A.M. Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but ... allegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004)(citing *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and

11

each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Well settled law requires exhaustion of each discrete claim for injury resulting from any alleged unlawful employment practice which "was or should have been included in a reasonable investigation of the administrative complaint." *E.g.*, *Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985)).

Further, in order to establish a hostile work environment claim, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(citations omitted).

Here, Hodges and Burt face an insurmountable problem. They cannot now point to any allegation in their EEOC charges that reasonably and clearly hints, much less shows, the kind of pervasive and oppressive conditions that would allow any fair reader, including this Court, to deduce their intent to prompt an EEOC investigation of Vectrus' workplace for a hostile work environment. Of course, their charges do point to some problems with one particular supervisor. They do not, however, paint a picture of a workplace so pervaded with dislike and plagued by unceasing insults as to be permeated with discriminatory behavior. Their charges

12

more accurately point to a single supervisor prone to posing insults, not a wholly cursed workplace. Because a hostile work environment claim could not have reasonably been expected to grow out of their allegations, the Court concludes they failed to exhaust their hostile workplace claims.

However, the issue is not so easily resolved as it concerns Hodges' and Burt's retaliation claims. A careful review of the Complaint reveals that Hodges and Burt do assert post-charge claims of retaliation: at least one shared false accusation by their supervisor of failing to clean up a work site and leaving it in an unsafe condition. In Hodges' case, he also describes as retaliation his being forced to work as a roofer in the hot and cold and on tall, often unsafe buildings and roofs that should have been repaired by outside roofing contractors by his own estimation. Burt too makes a distinct retaliation-themed allegation: in response to his administrative action, his co-workers began to ostracize him and would regularly abandon him.

Having read the EEOC charges, including the affidavits that were attached to them, the Court concludes the allegations in the Complaint concerning the above conduct fit within those charges, many of which were actually referenced therein. When a retaliation claim is based on adverse actions taken against the employee *after* the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge specifically alleging retaliation. *See, e.g.*, *Baker v.*

*Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Gupta v. E. Tex. St. Univ.*, 654 F.2d 411, 414 (5th Cir. 1981).[3] Accordingly, the Court rejects Vectrus's argument that Hodges and Burt were required to file new or amended EEOC charges concerning the allegedly post-charge retaliatory conduct.

### 2. The Claims for Retaliation

Although Hodges and Burt succeed on the failure-to-exhaust issue as it concerns their post-charge retaliatory conduct claims, they face another hurdle: to survive Rule 12, they must answer the other arguments raised by Vectrus. This they cannot do because the Court concludes, as it must, that the conduct at issue does not constitute actionable retaliatory conduct.

The standard for what constitutes an adverse employment action in the retaliation context differs from the standard applied in the discrimination context. *See Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). An employment action that will support a retaliation claim is one that is "materially adverse." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). Such an action is defined as one that "'well might have dissuaded a reasonable worker from making or

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

supporting a charge of discrimination,'" "irrespective of whether it is employment or workplace-related." *Id.* at 973-74 (quoting *White*, 548 U.S. at 68). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *White*, 548 U.S. at 68.

Here, Hodges alleges the retaliatory conduct consisted of (1) an allegedly false accusation of "failing to clean up a work site and leaving it in an unsafe condition",[4] (2) roofing assignments that required Hodges to work outside in the hot and cold and on top of buildings, and (3) roofing assignments that were better suited for outside contractors. (Doc. 15 at 11-12.)

First, "(c)riticisms ... and temporary non-substantial changes in work assignments are not actions that have a 'serious and material effect' on the terms and conditions of employment." *Jenkins v. Tuscaloosa City Bd. of Educ.*, 72 F.Supp.3d 1238, 1256 (N.D. Ala. Dec. 9, 2014) (citing *White v. Hall*, 389 F. App'x 956, 960 (11th Cir. 2010))). Adverse employment actions are instead "serious and material change in the terms, conditions, or privileges of employment ... as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d

---

[4] The Court has difficulty discerning whether this allegation actually stems from conduct that took place prior to the EEOC charge, or retaliatory conduct that took place after the charge. (*See* Doc. 15 at 12 ("Mr. Hodges claimed this allegation was harassment and bullying against him, *in* his EEOC Complaint.") (emphasis added); *compare* Doc. 12-1 at 5-6.) Regardless of whether this allegation is analyzed under the rubric of Title VII retaliation or substantive discrimination, it still fails to constitute an adverse employment action.

1232, 1238 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). As such, an accusation that Hodges (and Burt) had failed to clean up a work site or leave it in a safe condition without any tangible other employment action simply does not qualify as an actionable event of retaliation.

Hodges' and Burt's more personal retaliation allegations suffer similar defects. As the Court notes, Hodges holds the position of a roofer at Vectrus, obtained due to the seniority rules of the union in lieu of termination as a result of unrelated downsizing. It does not escape the Court that, as a roofer, Hodges would be expected to work on roofs during hot and cold temperatures and to attempt repairs before an outside contractor was brought in. In any event, based on the allegations in the Complaint, the Court concludes that Hodges has not pleaded an actionable claim for retaliation, and therefore Count III is due to be dismissed.

For his part, Burt claims that he was retaliated against because he was ostracized by co-workers and sent to work jobs with white co-workers who abandoned him at the jobsite. (Doc. 15 at 17.) Crucially, however, Burt does not allege that he was unable to perform his job or that he was disciplined for anything relating to the circumstances that ostracization may have created. In short, the Court concludes that Burt, too, has failed to allege a materially adverse employment action

sufficient to support a claim for retaliation. Thus, the Court concludes that Count VI is due to be dismissed as well.

## IV. CONCLUSION

Accordingly, for all the above reasons, it is ORDERED as follows:

(1) The Motion to Dismiss (Doc. 19) is GRANTED.

(2) Due to the Plaintiffs failure to exhaust their administrative remedies, the hostile workplace claims are dismissed without prejudice.

(3) The Plaintiffs' remaining claims are dismissed with prejudice.

A separate judgment shall issue.

DONE, this 7th day of May, 2020.

                              /s/ R. Austin Huffaker, Jr.
                          R. AUSTIN HUFFAKER, JR.
                          UNITED STATES DISTRICT JUDGE